UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SAMUEL LOVE, | Case No. 21-cv-00850-TSH |
| Plaintiff, | |
| v. | **ORDER GRANTING MOTION TO DISMISS** |
| HANDLERY HOTELS, INC., | Re: Dkt. No. 10 |
| Defendant. | |

## I.    INTRODUCTION

Plaintiff Samuel Love brings this case against Defendant Handlery Hotels, Inc., alleging the accessibility information on its reservations website was not sufficiently detailed to allow him to make an informed choice, in violation of the regulations promulgated under Title III of the Americans with Disabilities Act ("ADA"), 28 C.F.R. § 36.302(e)(1) (the "Reservations Rule"). Pending before the Court is Handlery's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6). ECF No. 10. Love filed an Opposition (ECF No. 17) and Handlery filed a Reply (ECF No. 18). The Court finds this matter suitable for disposition without oral argument and **VACATES** the July 1, 2021 hearing. *See* Civ. L.R. 7-1(b). Having considered the parties' positions, relevant legal authority, and the record in this case, the Court **GRANTS** Handlery's motion for the following reasons.

## II.    BACKGROUND

Love is a paraplegic who uses a wheelchair for mobility. Compl. ¶ 1, ECF No. 1. Handlery owns and operates the Handlery Union Square Hotel (the "Hotel"), which is located at 351 Geary St., San Francisco, California. *Id.* ¶ 2. Due to Love's condition, he needs an accessible guestroom, and he needs to be given information about accessible features in hotel rooms so that he can confidently book those rooms and travel independently and safely. *Id.* ¶¶ 14-15.

Love planned on making a trip in February of 2021 to the San Francisco area, and he chose

United States District Court
Northern District of California

the Hotel for lodging.  *Id.* ¶¶ 12-13.  On September 11, 2020, Love went to the reservation website at https://sf.handlery.com/ seeking to book an accessible room, but he found "insufficient information about the accessible features in the 'accessible rooms' at the Hotel to permit him to assess independently whether a given hotel room would work for him."  *Id.* ¶¶ 16, 18.  He alleges that

> because the Defendants have failed to identify and describe the core accessibility features in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his accessibility needs, the Defendants fail to comply with its ADA obligations and the result is that the Plaintiff is unable to engage in an online booking of the hotel room with any confidence or knowledge about whether the room will actually work for him due to his disability.

*Id.* ¶ 25.  This lack of information "created difficulty for the Plaintiff and the idea of trying to book this room -- essentially ignorant about its accessibility -- caused difficulty and discomfort for the Plaintiff and deterred him from booking a room at the Hotel."  *Id.* ¶ 26.

Love filed this case on February 3, 2021.  He brings claims (1) under the ADA, alleging Handlery's failure to ensure its reservation policies and procedures identify and describe accessible features in the hotels and guest rooms in enough detail to reasonably permit individuals with disabilities to assess independently whether a given hotel or guest room meets his or her accessibility needs, and (2) under the California Unruh Civil Rights Act, which provides that a violation of the ADA is a violation of the Unruh Act.  Cal. Civ. Code § 51(f).  He seeks injunctive relief, compelling Handlery to comply with the ADA and Unruh Act, damages under the Unruh Act, and attorney's fees and costs.

Handlery filed the present motion on May 8, 2021, arguing that at least 34 California district courts have already concluded that the type of information provided on its reservations website fully complies with the ADA, and that commentary from the U.S. Department of Justice ("DOJ") makes clear the website provides all the information that is required.

### III.   LEGAL STANDARD

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) "tests the legal sufficiency of a claim.  A claim may be dismissed only if it appears beyond doubt that the plaintiff

2

United States District Court
Northern District of California

can prove no set of facts in support of his claim which would entitle him to relief." *Cook v. Brewer*, 637 F.3d 1002, 1004 (9th Cir. 2011) (citation and quotation marks omitted). Rule 8 provides that a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Thus, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Plausibility does not mean probability, but it requires "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009). A complaint must therefore provide a defendant with "fair notice" of the claims against it and the grounds for relief. *Twombly*, 550 U.S. at 555 (quotations and citation omitted).

In considering a motion to dismiss, the court accepts factual allegations in the complaint as true and construes the pleadings in the light most favorable to the nonmoving party. *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008); *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007). However, "the tenet that a court must accept a complaint's allegations as true is inapplicable to threadbare recitals of a cause of action's elements, supported by mere conclusory statements." *Iqbal*, 556 U.S. at 678.

If a Rule 12(b)(6) motion is granted, the "court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1127 (9th Cir. 2000) (en banc) (citations and quotations omitted). However, a court "may exercise its discretion to deny leave to amend due to 'undue delay, bad faith or dilatory motive on part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party . . . [and] futility of amendment.'" *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 892–93 (9th Cir. 2010) (alterations in original) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)).

## IV.   REQUESTS FOR JUDICIAL NOTICE

As part of its motion, Handlery requests the Court take judicial notice of the following documents:

1) A copy of the "Landing page" and Accessibility Tab of its website,

1  https://sf.handlery.com/ (Ex. 1).

2  2) A copy of the relevant pages from its website showing the various

3  accessible room descriptions (Ex. 2).

4  3) A list of Love's cases filed in California federal court from PACER (Ex. 3).

5  4) The Consent Decree in *United States v. Hilton Worldwide Inc.*, No. 10-cv-1924, ECF

6  No. 5 (D.D.C. Nov. 29, 2010) (Ex. 4).

7  Request for Judicial Notice ("RJN"), ECF No. 10-2.  Love opposes the request as to exhibit 3,

8  arguing his litigation history is not relevant to the issues before the Court.  Opp'n at 1.

9  In general, the Court may not look beyond the four corners of a complaint in ruling on a

10  Rule 12(b)(6) motion, except for documents incorporated into the complaint by reference and any

11  relevant matters subject to judicial notice.  *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir.

12  2007) (per curiam); *Lee v. City of Los Angeles*, 250 F.3d 668, 688–89 (9th Cir. 2001).  The Court

13  may take judicial notice of matters that are either (1) generally known within the trial court's

14  territorial jurisdiction or (2) capable of accurate and ready determination by resort to sources

15  whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b).

16  Proper subjects of judicial notice when ruling on a motion to dismiss include court

17  documents already in the public record and documents filed in other courts.  *Reyn's Pasta Bella,*

18  *LLC v. Visa USA, Inc.*, 442 F.3d 741, 746 n.6 (9th Cir. 2006).  Thus, the consent decree at exhibit

19  4 is the proper subject of judicial notice.  As to Exhibit 3, the Court finds a list of Love's other

20  cases is not relevant here.

21  Websites and their contents may also be proper subjects for judicial notice.  *Threshold*

22  *Enterprises Ltd. v. Pressed Juicery, Inc.*, 445 F. Supp. 3d 139, 146 (N.D. Cal. 2020) (and cases

23  cited therein); *Wible v. Aetna Life Ins. Co.*, 375 F. Supp. 2d 956, 965 (C.D. Cal. 2005)

24  (recognizing that "websites and their contents may be proper subjects for judicial notice" where

25  party "supplied the court with hard copies of the actual web pages of which they sought to have

26  the court take judicial notice).  Further, under the doctrine of incorporation by reference, the Court

27  may consider not only documents attached to the complaint, but also documents whose contents

28  are alleged in the complaint, provided the complaint "necessarily relies" on the documents or

United States District Court
Northern District of California

4

contents thereof, the document's authenticity is uncontested, and the document's relevance is uncontested. *Coto Settlement v. Eisenberg*, 593 F.3d 1031, 1038 (9th Cir. 2010); *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003) ("Even if a document is not attached to a complaint, it may be incorporated by reference into a complaint if the plaintiff refers extensively to the document or the document forms the basis of the plaintiff's claim."). "The defendant may offer such a document, and the district court may treat such a document as part of the complaint, and thus may assume that its contents are true for purposes of a motion to dismiss under Rule 12(b)(6)." *Ritchie*, 342 F.3d at 908. The purpose of this rule is to "prevent plaintiffs from surviving a Rule 12(b)(6) motion by deliberately omitting documents upon which their claims are based." *Swartz*, 476 F.3d at 763 (internal marks omitted). Here, exhibits 1 and 2 are publicly-accessible web pages, and Love expressly cites to Handlery's website in his complaint. Compl. ¶ 16. Thus, the Court may consider these documents in evaluating Handlery's motion. *Barnes v. Marriott Hotel Servs., Inc.*, 2017 WL 635474, at \*4 (N.D. Cal. Feb. 16, 2017) (taking judicial notice of pages of Marriott's website in website accessibility claim).

Accordingly, the Court **GRANTS** Handlery's request as to exhibits 1-2 and 4 and takes judicial notice of these matters, but **DENIES** Handlery's request as to exhibit 3.

## V.    DISCUSSION

### A.    Love's ADA Claim

Title III of the ADA prohibits discrimination in places of public accommodation on the basis of disability, including websites. 42 U.S.C. § 12182(a); *Robles v. Domino's Pizza, LLC*, 913 F.3d 898, 905 (9th Cir.), *cert. denied*, 140 S. Ct. 122 (2019). As Ninth Circuit precedent makes clear, Love can pursue relief even if he did not actually visit the Hotel. *See Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.*, 867 F.3d 1093, 1099 (9th Cir. 2017). To succeed on a discrimination claim under Title III of the ADA, Love must show that (1) he is disabled within the meaning of the ADA; (2) Handlery is a private entity that owns, leases, or operates a place of public accommodation; and (3) Love was denied public accommodation by Handlery because of his disability. *Arizona ex rel. Goddard v. Harkins Amusement Enters., Inc.*, 603 F.3d 666, 670 (9th Cir. 2010). Handlery does not dispute the first two elements. The third element is satisfied

5

1    when the plaintiff can show a violation of accessibility standards.  *Rodriguez v. Barrita, Inc.*, 10 F.

2    Supp. 3d 1062, 1073 (N.D. Cal. 2014).

3        Love contends Handlery's website violates the Reservations Rule, which requires that a

4    "public accommodation that owns, leases (or leases to), or operates a place of lodging" must

5    comply with a number of requirements "with respect to reservations made by any means,"

6    including when such reservations are made through a third-party.  28 C.F.R. § 36.302(e).  In

7    particular, § 36.302(e)(1)(ii) requires that public accommodations "[i]dentify and describe

8    accessible features in the hotels and guest rooms offered through its reservations service in enough

9    detail to reasonably permit individuals with disabilities to assess independently whether a given

10   hotel or guest room meets his or her accessibility needs."  Love contends Handlery's reservation

11   system violates § 36.302(e) because the website does not provide sufficient detail about accessible

12   features to allow a wheelchair user to make an independent assessment of whether these features

13   would meet his needs.  Compl. ¶ 33.  He suggests that more detailed descriptions of rooms or

14   features would be appropriate, including whether (1) the hotel room and bathroom doors provide

15   at least 32 includes of clearance, (2) there is at least 30 inches width on the side of the bed so his

16   wheelchair can pull up next to the bed for transfer, (3) the desk where he will eat and work has

17   sufficient knee and toe clearance, (4) he can transfer to and use the toilet, (5) the restroom sink

18   provides appropriate knee clearance, (6) the restroom mirror is mounted at a lowered height so that

19   wheelchair users can use it, and (7) the shower includes in-shower seat grab bars mounted on the

20   walls and a detachable hand-held shower wand.  *Id.* ¶ 22.

21       In response, Handlery points to Appendix A to the regulations, in which the DOJ provides

22   the following commentary regarding accessibility information required under the regulations:

> The Department recognizes that **a reservations system is not intended to be an accessibility survey**. However, specific information concerning accessibility features is essential to travelers with disabilities.  Because of the wide variations in the level of accessibility that travelers will encounter, the Department cannot specify what information must be included in every instance.  For hotels that were built in compliance with the 1991 Standards, **it may be sufficient to specify that the hotel is accessible and, for each accessible room, to describe the general type of room (e.g., deluxe executive suite), the size and number of beds (e.g., two queen beds), the type of accessible bathing facility (e.g., roll-in shower),**

United States District Court
Northern District of California

1

**and communications features available in the room (e.g., alarms and visual notification devices)**. Based on that information, many individuals with disabilities will be comfortable making reservations.

2

3

For older hotels with limited accessibility features, information about the hotel should include, at a minimum, information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms.

4

5

\*\*\*

6

[O]nce reservations are made, some hotels may wish to contact the guest to offer additional information and services. Or, **many individuals with disabilities may wish to contact the hotel or reservations service for more detailed information**. At that point, trained staff (including staff located on-site at the hotel and staff located off-site at a reservations center) should be available to provide additional information such as the specific layout of the room and bathroom, shower design, grab-bar locations, and other amenities available (e.g., bathtub bench).

7

8

9

10

11

12   28 C.F.R. Pt. 36, App. A, "Title III Regulations 2010 Guidance and Section-by-Section Analysis"

13   (the "2010 Guidance") (emphasis added); *see also* Nondiscrimination on the Basis of Disability by

14   Public Accommodations and in Commercial Facilities, 75 FR 56,236, 56,274 (Sept. 15, 2010) (to

15   be codified at 28 C.F.R. pt. 36).[1]

16         Love refers to the 2010 Guidance as "musings by the DOJ." Opp'n at 4. However, as a

17   construction of the Reservations Rule, the DOJ guidance is "entitled to substantial deference."

18   *Kohler v. Presidio Int'l, Inc.*, 782 F.3d 1064, 1069 (9th Cir. 2015) (DOJ's guidance interpreting

19   requirements of the ADA is "entitled to substantial deference") (internal quotation marks and

20   citation omitted); *Robles*, 913 F.3d at 904 ("DOJ's administrative guidance on ADA compliance is

21   entitled to deference") (citing *Bragdon v. Abbott*, 524 U.S. 624, 646 (1998)); *Fortyune v. City of

22   Lomita*, 766 F.3d 1098, 1104 (9th Cir. 2014) ("The DOJ's interpretation of its ADA implementing

23   regulations is entitled to controlling weight unless it is plainly erroneous or inconsistent with the

24   regulation.") (internal quotation marks and citations omitted).

25         Love argues that the DOJ's interpretation of the regulations is only entitled to deference if

26   the regulations are uncertain or ambiguous. Opp'n at 24; *see Kisor v. Wilkie*, —— U.S. ——, 139

27

28   [1] Also available online at
https://www.ada.gov/regs2010/titleIII_2010/titleIII_2010_regulations.htm#a2010guidance.

United States District Court
Northern District of California

United States District Court
Northern District of California

S. Ct. 2400, 2415, 204 L.Ed.2d 841 (2019) ("If uncertainty [about a regulation] does not exist, there is no plausible reason for deference [to the agency's interpretation].  The regulation then just means what it means—and the court must give it effect, as the court would any law.").  This argument is not persuasive.  The Reservations Rule requires hotels to describe their accessible features in "enough detail" to "reasonably permit" individuals with disabilities to assess whether the hotel meets their accessibility needs.  Looking solely at the language of the regulation, it is far from clear what constitutes "enough" detail or when an individual's demand for more information is "reasonable."  *See Kisor*, 139 S. Ct. at 2410 (finding that ambiguous regulations "involve[ ] a choice between (or among) more than one reasonable reading" such that "the court must make a judgment call").  Thus, the Reservations Rule on its own is ambiguous and the DOJ's interpretation of the regulation is entitled to deference.

Reviewing the Hotel's website, the Court finds Handlery provides accessible features descriptions that exceed the level of detail proposed by the ADA guidance.  The website includes extensive details:

### IN-ROOM ACCESSIBLE FEATURES

- Electric switches and outlets are at a height for total wheelchair accessibility
- Doors have lever hardware
- Peepholes are at two different levels
- Lowered closet rods
- Push-button nightstand lamps
- Toilets with seats are at a height for total wheelchair accessibility
- Bathroom door opening to accommodate a wheelchair
- Safety bar surrounding shower and toilet
- Lowered towel bars
- Accessible sink
- Roll-in showers with folding seats (some rooms)
- Shower spray extension (some rooms)

RJN, Ex. 1; https://sf.handlery.com/accommodations/accessible-rooms.  Additionally, the website permits users to view a list of accessible room types along with a description of the features available in each such room.  *Id.*, Ex. 2 (showing room descriptions).  Finally, the website provides contact information for any guest who has additional questions about accommodations or accessibility features: "To find out more information on our accessible rooms, please contact our

United States District Court
Northern District of California

1   reservations department on 415 781 7800 / 1800 995 4874 or email us reservation-

2   sf@handlery.com." *Id.*, Ex. 1.

3       Love asserts that the website left him "essentially ignorant" about the Hotel's accessibility,

4   Compl. ¶ 26, but this is contradicted by the website he incorporated by reference into the

5   complaint.  The website provides more information about the Hotel's accessibility than the

6   Reservations Rule, as construed by the 2010 Guidance, requires.  Equivalent website disclosures

7   were held to sufficiently meet the requirements of the ADA by multiple cases.  *See Love v.*

8   *Ashford San Francisco II LP*, 2021 WL 1428372, at *5 (N.D. Cal. Apr. 15, 2021) (collecting

9   cases); *Love v. CCMH Fisherman's Wharf LLC*, 2021 WL 1734924, at *7 (N.D. Cal. May 3,

10  2021); *Whitaker v. KK LLC*, 2021 WL 1700228, at *5 (N.D. Cal. Apr. 29, 2021); *Love v. Marriott*

11  *Hotel Servs., Inc.*, 2021 WL 810252, at *6 (N.D. Cal. Mar. 3, 2021); *Arroyo v. JWMFE Anaheim,*

12  *LLC*, 2021 WL 936018, at *3 (C.D. Cal. Feb. 16, 2021).  The website disclosures provided here

13  are even more substantial than the disclosures recently found sufficient under the ADA in *Garcia*

14  *v. Gateway Hotel L.P.*, where the court rejected the plaintiff's claim that the exact information

15  listed in Love's complaint here, Compl. ¶ 22, was required by the Reservation Rule.  2021 WL

16  936176, at *5 (C.D. Cal. Feb. 25, 2021) ("Plaintiff's interpretation of what is needed for him to

17  determine whether he can use the room is not the law.").  As the *Gateway Hotel* court noted,

18          While this Plaintiff may think these five sentences are the most
19          important, another plaintiff may think that the slope is the most
            important thing a website should include. Yet another might think that
20          the weight of the doors should be included on a hotel's website. In
            short, each individual plaintiff may have a separate list of the five
21          most important things to list from the ADAAG on the hotel's website,
            such that, in the end, a hotel would be required to state on their
22          website whether their facilities comply with each and every
            requirement of the AGAAG which is more than 250 pages long.
23          Plaintiff cannot simply cherry pick a handful of regulations he thinks
            are most important and argue that information is what the law
24          requires.

25  *Id.*

26      Further, the DOJ has approved of alternatives to listing information on websites, stating

27  that "'covered entities with inaccessible Web sites may comply with the ADA's requirement for

28  access by providing an accessible alternative, such as a staffed telephone line, for individuals to

access the information, goods, and services of their Web site.'" *Gorecki v. Dave & Buster's, Inc.*, 2017 WL 6371367, at *5 (C.D. Cal. Oct. 10, 2017) (quoting Nondiscrimination on the Basis of Disability, 75 Fed. Reg. at 43466).  As noted above, the Hotel's website invites guests to call with any questions.  RJN, Ex. 1.  As one court held on this exact issue, "the DOJ acknowledges that individuals with disabilities may wish to contact the hotel or reservations service for more detailed information," because "if a website was required to have all relevant information, individuals would not need to call the hotel to get further information."  *Strojnik v. Orangewood*, 2020 U.S. Dist. LEXIS 11743, at *20-21 (C.D. Cal. January 22, 2020), *aff'd Strojnik v. Orangewood LLC*, 829 F. App'x 783 (9th Cir. 2020) (citing 28 C.F.R. § Pt. 36, App. A); *see also Marriott Hotel Servs.*, 2021 WL 810252, at *7 (recognizing that "a hotel's accessible features – 'such as the specific layout of the room and bathroom, shower design, grab-bar locations, and other amenities available (e.g., bathtub bench)' can be provided 'once reservations are made' and do not have to be provided on the reservations website.") (quoting 28 C.F.R. Pt. 36, App. A); *Garcia*, 2021 WL 936176, at *5 ("[A] website need not include all potentially relevant accessibility information where an inquiring patron can simply call the hotel for more information.").

Finally, the DOJ's enforcement position in litigation about the accessibility guidelines reinforces the sufficiency of the website's information.  *See* RJN, Ex. 4 (Consent Decree in *United States v. Hilton Worldwide, Inc.*, No. 10-cv-1924, ECF No. 5 (D.D.C. Nov. 29, 2010)).  In that case, the DOJ alleged that the defendant's online reservations system did not "accurately reflect the inventory of accessible types of rooms and amenities available at each property[.]"  Consent Decree ¶ 8(c).  The consent decree was entered to resolve the DOJ's ADA enforcement action involving a "system of more than 2,800 hotels throughout the United States . . . ."  *Id.* ¶ 1.  Under the Consent Decree, the defendant entity was obligated to ensure that its reservations system:

> [I]dentify by room type which rooms are accessible, and for each such room type, which of the following accessibility or other features it has:
> (i) Number of beds
> (ii) Size of bed(s)
> (iii) Roll-in shower or accessible tub
> (iv) Visual alarms
> (v) Executive level
> (vi) Suite

1   (vii) Kitchen/kitchenette
    (viii) View, if a particular hotel charges more for a room based
2   on the view.

3   *Id.* (Consent Decree ¶ 25(a)(i)-(viii)).  In other words, the DOJ required the same guestroom

4   accessibility information enumerated in its 2010 Guidance (and all of which is present, as

5   applicable, on the website in the instant case).  *Compare* Consent Decree ¶ 25(a)(i)-(viii) with 28

6   C.F.R. Pt. 36, App. A ("it may be sufficient . . . for each accessible room, to describe the general

7   type of room (e.g., deluxe executive suite), the size and number of beds (e.g., two queen beds), the

8   type of accessible bathing facility (e.g., roll-in shower), and communications features available in

9   the room (e.g., alarms and visual notification devices)")).  This is a further indication of the DOJ's

10  consistent position concerning the accessibility information required to comply with the

11  regulations.  *See Price v. Stevedoring Servs. of Am., Inc.*, 697 F.3d 820, 832 n.8 (9th Cir. 2012)

12  (explaining that "deference to agency litigating positions" is warranted based on "factors such as

13  the consistency of its position and its application of that position through administrative practice").

14  Moreover, the court's approval of the Consent Decree reflects a judicial determination that the

15  requirements imposed were "fair, adequate, reasonable, and appropriate under the particular

16  facts[.]"  *Citizens for a Better Env't v. Gorsuch*, 718 F.2d 1117, 1126 (D.C. Cir. 1983) (quoting

17  *Metro. Hous. Dev. Corp. v. Vill. of Arlington Heights*, 616 F.2d 1006, 1014 (7th Cir. 1980));

18  *accord United States v. State of Oregon*, 913 F.2d 576, 580 (9th Cir. 1990) ("Before approving a

19  consent decree, a district court must be satisfied that it is at least fundamentally fair, adequate and

20  reasonable . . . [i]n addition, because it is a form of judgment, a consent decree must conform to

21  applicable laws.") (citations omitted).

22      Love contends "the Consent Decree never mentions the relevant regulation, never cites or

23  uses the regulatory language, and was a settlement agreement reached in November of 2010—

24  almost half a year before the regulation at issue in this case because effective and enforceable, i.e.,

25  March 15, 2011."  Opp'n at 25.  However, the Consent Decree tracks the requirements of the

26  Reservations Rule in ¶ 25, further indication of the DOJ's consistent position concerning the

27  accessibility information required to comply with the Reservations Rule.  *See Price*, 697 F.3d at

28  832 n.8 (explaining that "deference to agency litigating positions" is warranted based on "factors

United States District Court
Northern District of California

11

such as the consistency of its position and its application of that position through administrative practice").  Moreover, the court's approval of the HWI Consent Decree reflects a judicial determination that the requirements imposed were "fair, adequate, reasonable, and appropriate under the particular facts[.]"  *Citizens for a Better Env't*, 718 F.2d at 1126 (quoting *Metro. Hous. Dev. Corp.*, 616 F.2d at 1014); *United States v. State of Oregon*, 913 F.2d at 580 ("Before approving a consent decree, a district court must be satisfied that . . . a consent decree must conform to applicable laws.") (internal citations omitted).

The Court notes that at least one decision has denied a motion to dismiss a Reservations Rule claim.  *See Garcia v. Patel & Joshi Hosp. Corp.*, 2021 WL 1936809 (C.D. Cal. Mar. 19, 2021).  *Patel & Joshi* identifies some weaknesses in Handlery's position, including ambiguous portions of the 2010 Guidance and the fact that the Hilton Consent Decree predated regulatory adoption of the Reservations Rule, but it does not provide a satisfactory alternative standard.  *Id.* at \*4.  That case describes the "requested information about the accessibility of toilets or of clear floor space" as "sufficiently narrow and consistent with the kinds of information that the DOJ Guidance identifies," *id.* at \*5, but does not explain why that particular information would be required under the 2010 Guidance, or what differentiates it from any other information that some hotel guests with disabilities might require.

*Patel & Joshi* also discounted the defendant hotel's note that patrons could contact the front desk with questions not resolved by the description of amenities, holding that the invitation for such further inquiry "does little to support the Hotel's compliance with the Reservations Rule." *Id.*  However, it does not address the portion of the 2010 Guidance acknowledging that "many individuals with disabilities may wish to contact the hotel or reservations service for more detailed information . . . such as the specific layout of the room and bathroom, shower design, grab-bar locations, and other amenities available."  *See* 2010 Guidance.  Nor is a possibility that some patrons with disabilities might need to call the hotel for further information about their specific needs clearly inconsistent with the regulatory requirement "to ensure that individuals with disabilities can make reservations for accessible guest rooms . . . in the same manner as individuals who do not need accessible rooms," 28 C.F.R. § 36.302(e)(1)(i), since some patrons

United States District Court
Northern District of California

who do not need accessible rooms might also need to call and inquire about their own specific needs. For these reasons, the Court follows the other courts that have found *Patel & Joshi*'s minority view unpersuasive. *See CCMH Fisherman's Wharf LLC*, 2021 WL 1734924, at \*8; *Love v. Wildcats Owner LLC*, 2021 WL 1253739, at \*5 (N.D. Cal. Apr. 5, 2021).

In sum, the Court finds Handlery's website complies with the regulations. The Accessibility section of the website not only provides the information contemplated by the 2010 Guidance ("information about accessible entrances to the hotel, the path of travel to guest check-in and other essential services, and the accessible route to the accessible room or rooms,"28 C.F.R. Pt. 36, App. A), but also detailed descriptions of the guest rooms' accessibility features. Indeed, the information provided under the website's accessibility tab goes beyond the 2010 Guidance. Accordingly, the Court finds Love fails to state a claim under the ADA for which relief can be granted and the first cause of action must be dismissed. As Love's pleading could not be cured by the allegation of other facts, the Court finds leave to amend would be futile.

**B.     Supplemental Jurisdiction**

The Court, under 28 U.S.C. § 1367(c), may decline to exercise supplemental jurisdiction under circumstances that include when "the district court has dismissed all claims over which it ha[d] original jurisdiction[.]" 28 U.S.C. § 1367(c)(3). As the Court has dismissed the only federal claim before it, and that claim provided the only basis for its original jurisdiction, the Court will exercise its discretion to decline jurisdiction over the remaining state law claims.

## VI.    CONCLUSION

For the reasons stated above, the Court **GRANTS** Handlery's motion to dismiss. As leave to amend would be futile, dismissal is **WITHOUT LEAVE TO AMEND**.

**IT IS SO ORDERED.**

Dated: June 21, 2021

THOMAS S. HIXSON
United States Magistrate Judge